444 A.2d 1190

**GRAZIANO CONSTRUCTION COMPANY, INC., a Pennsylvania corporation, Appellant,**

v.

**Laurence F. LEE, Jr., Bert A. Betts, Roy B. Davis, Jr., N. Clement Slade, Jr., Robert M. Green, Luther H. Hodges, James B. McIntosh, Arthur W. Milam, Jack H. Quartitius, Frederick H. Schroeder, and John W. York, not individually but as trustees of Fidelity Mortgage Investors, a Massachusetts business trust; and DLPST Corporation, a Pennsylvania corporation.**

Superior Court of Pennsylvania.

Argued Nov. 13, 1980.

Filed April 23, 1982.

Petition for Allowance of Appeal Denied Aug. 30, 1982.

Robert W. Doty, Pittsburgh, for appellant.

Richard B. Tucker, III, Pittsburgh, for appellees.

Before PRICE, CAVANAUGH and HOFFMAN, JJ.

PRICE, Judge:

On May 23, 1974, appellant, Graziano Construction Company, Inc. [hereinafter Graziano] obtained a writ of foreign attachment directing the seizure of certain property owned by Fidelity Mortgage Investors [hereinafter FMI]. The attachment was released on June 25, 1974, when FMI filed a bond in the amount of $275,000 with the court below. On August 29, 1978, the court of common pleas granted FMI's motion to cancel and discharge the bond, reasoning that because Pennsylvania's foreign attachment procedure was held unconstitutional by the United States Court of Appeals for the Third Circuit in *Jonnet v. Dollar Savings Bank*, 530 F.2d 1123 (3d Cir. 1976), the bond posted by FMI was invalid. Graziano appeals from the order cancelling the bond and discharging FMI as principal and United States Fire Insurance Company [hereinafter USFI] as surety, contending that the trial court's retroactive application of the holding in *Jonnet* was inappropriate. For the reasons stated herein, we conclude that the question presented for decision is moot and, therefore, quash the appeal.

The pertinent facts are largely undisputed. Graziano commenced this action in assumpsit on May 23, 1974, by filing a praecipe for a writ of foreign attachment. After the writ had issued, Graziano filed its complaint against FMI and DLPST Corporation [hereinafter DLPST] on May 28, 1974, seeking recovery of the balance due for the construction of an office building located in the city of McKeesport,

Allegheny County.[1]  Pursuant to the writ of foreign attach-
ment, various property owned by FMI, including the office
building, was attached.  The attachment was dissolved and
the attached property released when, on June 25, 1974, FMI
filed a $275,000 bond with the trial court.[2]  FMI was princi-
pal and USFI surety on the bond, which named the Com-
monwealth of Pennsylvania as obligee to the use of Grazi-
ano.

Having secured the release of the attached property, FMI
filed its answer to Graziano's complaint on July 1, 1974.  On
August 30, 1974 DLPST filed its answer and new matter, to
which Graziano replied on December 30, 1974.  On January
30, 1975, shortly before the case was placed at issue,[3] FMI
filed a petition in the United States District Court for the
Southern District of New York for a voluntary arrangement
under chapter XI of the federal Bankruptcy Act.[4]  The
bankruptcy judge issued an order the following day autho-
rizing FMI to "operate its business and manage its proper-
ty" as debtor in possession pending further order of the
bankruptcy court.  (Record at 49a).  In view of the bank-
ruptcy proceeding, the court of common pleas entered an
order on March 26, 1976, directing that the case *sub judice*
be stricken from issue and continued pending further order
of the bankruptcy court.  The plan of arrangement sub-
mitted by FMI was approved by its creditors and subse-
quently confirmed by the bankruptcy court on January 4,
1978.  FMI was "released from all of its dischargeable

1.  Graziano constructed the office building for DLPST pursuant to the
terms of two written agreements concluded between Graziano and
DLPST in February, 1971.  FMI, the construction mortgage lender,
acquired title to the building through mortgage foreclosure proceed-
ings instituted when DLPST defaulted on its construction loan.

2.  The amount of the bond was established by the court below
following a hearing on June 13, 1974.

3.  Graziano moved to have the case placed at issue on February 3,
1975.

4.  Bankruptcy Act of 1898, c. 541, § 301 *et seq., as amended*, super-
seded by the Bankruptcy Reform Act of 1978, Pub.L. 95–598, 92 Stat.
2549 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

debts" and all creditors holding dischargeable debts were "enjoined, stayed and restrained from instituting or continuing any action or employing any process to collect such debts as liabilities or obligations of FMI." (Record at 76a–77a).

While the bankruptcy proceeding was pending, two important cases involving Pennsylvania's foreign attachment procedure were decided. In *Jonnet v. Dollar Savings Bank*, 530 F.2d 1123 (3d Cir. 1976), the United States Court of Appeals for the Third Circuit held that Pennsylvania's Rules of Civil Procedure relating to writs of foreign attachment deprived an alleged debtor of procedural due process and were, therefore, unconstitutional. The holding in *Jonnet* was applied retroactively by our supreme court in *Schreiber v. Republic Intermodal Corporation*, 473 Pa. 614, 375 A.2d 1285 (1977). The court there held that *Jonnet* did not establish a new principle of law which might be applied prospectively only [5] and, accordingly, affirmed two orders invalidating writs of foreign attachment obtained prior to the date of the *Jonnet* decision.

On the basis of *Jonnet* and *Schreiber*, FMI filed a motion seeking cancellation and discharge of the bond it had previously posted as security for the release of the attachment. On August 29, 1978, the court below granted the motion,

**5.** "[T]he threshold test in deciding whether a new decision might be given prospective application only is whether the decision established a new principle of law, either by overruling clear past precedent or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Schreiber v. Republic Intermodal Corp.*, 473 Pa. 614, 622, 375 A.2d 1285, 1289 (1977), citing *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). The *Schreiber* court concluded that the result in *Jonnet v. Dollar Savings Bank*, 530 F.2d 1123 (3d Cir. 1976) was clearly foreshadowed because "the constitutional defects in Pennsylvania's rules governing foreign attachment were patent in light of recent precedents of the United States Supreme Court." *Schreiber v. Republic Intermodal Corp.*, 473 Pa. at 622, 375 A.2d at 1289, citing *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), *reh. denied*, 409 U.S. 902, 93 S.Ct. 177, 34 L.Ed.2d 165 (1972). *See also Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

thereby authorizing the cancellation and discharge of the bond and the discharge of FMI as principal and USFI as surety.

FMI subsequently decided to cancel the bond.[6] It contacted Alexander and Alexander of Texas, Inc., the agent for USFI which had issued the bond and, upon receipt of a confirmation letter dated September 18, 1978 and a copy of the August 29 order authorizing cancellation of the bond, the agent cancelled the bond. (Record at 112a–113a). Graziano subsequently filed a notice of appeal on September 27, 1978.[7]

6. The parties dispute the events leading to the cancellation of the bond on or about September 20, 1978, eight days before the expiration of the thirty day period within which Graziano was entitled to appeal from the order. Graziano contends that on September 28, one day *after* it had filed its notice of appeal, its counsel spoke by telephone with counsel for FMI and was allegedly informed that, since Graziano had appealed, FMI would continue the bond pending the outcome of the appeal. FMI, on the other hand, maintains that the parties' counsel discussed the question of appeal in early September, at which time counsel for FMI was purportedly told that Graziano had not yet decided whether to appeal. Counsel for FMI contends that at no time was counsel for Graziano advised that FMI would continue the bond pending disposition of an appeal. (Record at 111a).

We find it pointless to attempt to resolve this factual dispute. The parties agree that the bond was cancelled on or about September 20, 1978. That it was cancelled before Graziano filed its notice of appeal is irrelevant, given the absence of a *written* agreement between opposing counsel that the bond would not be cancelled pending the outcome of an appeal. "Oral agreements between attorneys will not be considered or recognized by an appellate court *if disputed* unless made in open court concerning a matter then under consideration." Pa.R.A.P. 3122 (emphasis added). *See* Pa.R.C.P. 201; *Commonwealth ex rel. Patricia L. F. v. Malbert J. F., Jr.*, 278 Pa.Superior Ct. 343, 345 n.2, 420 A.2d 572, 573 n.2 (1980); *Appel Vending Co. v. 1601 Corp.*, 204 Pa.Superior Ct. 243, 247, 203 A.2d 812, 814 (1964). *Cf. Britton v. Continental Mining and Smelting Corp.*, 366 Pa. 82, 85, 76 A.2d 625, 627 (1950) (alleged oral agreement between counsel not disputed).

7. Graziano filed its notice of appeal to the Supreme Court of Pennsylvania, believing that that court had exclusive jurisdiction of the matter under 42 Pa.C.S.A. § 722(7). The supreme court, however, concluded that it lacked jurisdiction and, pursuant to Pa.R.A.P. 751(a), transferred the appeal to this court on December 21, 1979.

■ Presently before us is FMI's motion to dismiss the appeal, disposition of which motion was deferred pending oral argument before this panel. FMI contends that the order authorizing cancellation of the bond is not a final order within the meaning of 42 Pa.C.S.A. § 742[8], and that the appeal is moot because the bond has been cancelled. We agree with the latter contention.

> "[C]ases presenting mootness problems involve litigants who clearly had standing to sue at the outset of the litigation. The problems arise from events occurring after the lawsuit has gotten under way—changes in the facts or in the law—which allegedly deprive the litigant of the necessary stake in the outcome. . . ."

*In re Gross*, 476 Pa. 203, 209, 382 A.2d 116, 119 (1978), *quoting* G. Gunther, *Constitutional Law* 1578 (9th ed. 1975). The appellate courts of this Commonwealth will not decide moot or abstract questions, *In re Gross, supra; Ridley Park Shopping Center, Inc. v. Sun Ray Drug Co.*, 407 Pa. 230, 180 A.2d 1 (1962); *Wortex Mills v. Textile Workers*, 369 Pa. 359, 85 A.2d 851 (1952), except in rare instances when the question presented is one of great public importance, *Meyer v. Strause*, 422 Pa. 136, 221 A.2d 191 (1966); *Janet D. v. Carros*, 240 Pa.Superior Ct. 291, 362 A.2d 1060 (1976), or when the question presented is capable of repetition yet escaping judicial review, *Devlin v. Osser*, 434 Pa. 408, 254 A.2d 303 (1969); *Werner v. King*, 310 Pa. 120, 164 A. 918 (1933). *See generally Cases Moot on Appeal: A Limit on the Judicial Power*, 103 U.Pa.L.Rev. 772 (1955).

■ The question presented in this appeal is clearly moot. The trial court's order of August 29, 1978 relieved FMI and USFI of the ongoing responsibility to secure the alleged indebtedness of FMI. Graziano did not attempt to stay the

*Graziano Construction Company, Inc. v. Lee*, 487 Pa. 241, 409 A.2d 330 (1979).

8. "The Superior Court shall have exclusive appellate jurisdiction of all appeals from *final orders*. . . ." Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 742 (emphasis added).

effect of the trial court's order pending its decision to appeal.[9] Accordingly, in the absence of a stay or, for that matter, an appeal, FMI contacted the agent for USFI and the bond was cancelled on or about September 20, 1978. Thus, there no longer exists a bond to which Graziano may look for recovery if it prevails in the underlying action in assumpsit, even assuming, *arguendo*, that the court below erred in authorizing cancellation of the bond. It is well established that

> [w]e cannot enter judgments or decrees to which effect cannot be given. *Winston v. Ladner*, 264 Pa. 548, 108 A. 22; *Com. ex rel. v. Lawler*, 343 Pa. 353, 22 A.2d 900. The rule is that where . . . pending an appeal, an event occurs which renders it impossible for the appellate court to grant any relief, the appeal will be dismissed. *Com. ex rel. v. Cairns*, 48 Pa.Superior Ct. 265; *Reichard's License*, 45 Pa.Superior Ct. 606; *Mills v. Green*, 159 U.S. 651, 16 S.Ct. 132 [40 L.Ed. 293].

*O'Donnell v. Pennsylvania Liquor Control Board*, 158 Pa.Superior Ct. 533, 536, 45 A.2d 369, 370 (1946). *See Sacred Heart Hospital v. Lanshe*, 445 Pa. 57, 282 A.2d 331 (1971); *Baker Nursing Home, Inc. Appeal*, 28 Pa.Commonwealth Ct. 603, 369 A.2d 1336 (1977).

The circumstances *sub judice* are analogous to those in *Commonwealth v. One 1978 Lincoln Mark V*, 52 Pa.Commonwealth Ct. 353, 415 A.2d 1000 (1980). In that case, Pennsylvania State Police officers seized an automobile that was being used to transport various controlled substances. A

**9.** Pa.R.A.P. 1732(a) provides, in pertinent part, that an "[a]pplication for a stay of an order of a lower court pending appeal, or for approval of or modification of the terms of any supersedeas . . . . must ordinarily be made in the first instance to the lower court . . . ." Graziano asserts that it was not required to apply for a stay in order to appeal from the August 29 order. As a general statement of the law, Graziano's assertion is accurate. However, it has no bearing on whether a stay *was* necessary to prevent FMI from effectuating the order, *i.e.*, cancelling the bond. *Cf. Schreiber v. Republic Intermodal Corp.*, 473 Pa. 614, 620 n.4, 375 A.2d 1285, 1288 n.4 (1977) (appellants posted supersedeas bond to stay lower court order vacating foreign attachment).

forfeiture petition was filed and, after notice and a hearing, the vehicle was forfeited to the Commonwealth. Thereafter, an individual claiming to be the equitable owner of the vehicle obtained an ex parte rehearing order, which was subsequently stricken. The individual claiming equitable ownership appealed, "but failed to obtain any supersedeas or stay." *Id.*, 52 Pa.Commonwealth Ct. at 355, 415 A.2d at 1001 (footnote omitted). While the appeal was pending, the Commonwealth sold the subject vehicle. The Commonwealth Court dismissed the appeal as moot, reasoning as follows:

> While an actual controversy existed when this action began, the subject matter, the rem, of the case is gone. The property having been sold and no person before us having any interest remaining therein, the issue is entirely moot. Further, *the terms of the order that is here on appeal have been fully executed and there remains no power to grant the relief sought. Because an order in favor of appellants would have no effect we must find this case moot.*

*Id.*, 52 Pa.Commonwealth Ct. at 355–56, 415 A.2d at 1001–02 (emphasis added) (citations omitted). *See Herman v. Pepper*, 317 Pa. 349, 351, 176 A. 201, 202 (1935). *Cf. Commonwealth ex rel. Stein v. Stein*, 487 Pa. 1, 8, 406 A.2d 1381, 1385 (1979) (case not moot where sale of real property at mortgage foreclosure created fund to be divided between the parties).

Because the order of August 29, 1978 relieved FMI of any duty to continue to secure its alleged indebtedness, and because Graziano did not act to preserve the bond by obtaining a stay of the order, FMI was well within its rights in cancelling the bond. The bond having been discharged and cancelled, Graziano's appeal must be dismissed as moot.

The appeal is dismissed.